# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
No. 13-543V
Filed: July 28, 2016
Not for Publication

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| KEVIN McERLEAN, | * |
| | * |
| Petitioner, | * |
| | * |
| v. | * |
| | * |
| SECRETARY OF HEALTH | * |
| AND HUMAN SERVICES, | * |
| | * |
| Respondent. | * |
| | * |

Attorneys' fees and costs decision;
respondent objects to interim fee
award; reasonable hourly rate;
hours reasonably expended

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Donald M. Gerstein, Cheyenne, WY, for petitioner.
Lara A. Englund, Washington, DC, for respondent.

**MILLMAN, Special Master**

## DECISION AWARDING ATTORNEYS' FEES AND COSTS[1]

On February 19, 2016, the undersigned issued a damages decision in this case pursuant to the parties' stipulation, awarding petitioner $200,000 in compensation. On March 4, 2016, petitioner filed an Application for Award of Attorney's [sic] Fees and Reimbursement of Costs, seeking $121,944.74. On March 18, 2016, petitioner filed an amended Motion for Attorneys' Fees and Costs, requesting $132,550.68. Respondent has raised objections to certain aspects of petitioner's attorneys' fees and costs application.

For the reasons set forth below, the undersigned awards petitioner $77,269.90 in

---

[1] Because this unpublished decision contains a reasoned explanation for the special master's action in this case, the special master intends to post this unpublished decision on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). Vaccine Rule 18(b) states that all decisions of the special masters will be made available to the public unless they contain trade secrets or commercial or financial information that is privileged and confidential, or medical or similar information whose disclosure would constitute a clearly unwarranted invasion of privacy. When such a decision is filed, petitioner has 14 days to identify and move to redact such information prior to the document's disclosure. If the special master, upon review, agrees that the identified material fits within the banned categories listed above, the special master shall redact such material from public access.

reimbursement for attorneys' fees and costs.

## PROCEDURAL HISTORY

On August 5, 2013, petitioner filed a petition under the National Childhood Vaccine Injury Act, 42 U.S.C. §§ 300aa-10–34 (2012) ("Vaccine Act"), alleging that he suffered a winged scapula and pain and weakness in his right shoulder area as a result of an influenza ("flu") vaccination he received on October 20, 2011.   Pet. at ¶¶ 2, 5, 8.

During the initial status conference on November 1, 2013, respondent indicated she was willing to receive a reasonable settlement demand from petitioner.   The undersigned set a deadline of December 6, 2013 for petitioner to make a demand on respondent.

On December 5, 2013, petitioner filed a letter from a rehabilitation specialist, Dr. Michael D. Dambeck.   Ex. 12.   In his letter, Dr. Dambeck explained that because petitioner's injury had occurred two years before, he believed petitioner's "nerve recovery is likely as recovered as it will ever be," and that petitioner would need to continue his home exercise routines in order to sustain the improvement in his shoulder.   Id. at 2.

On December 5, 2013, petitioner filed a status report asking for an extension of time to send a demand to respondent, explaining he was still gathering the information necessary to prepare a demand.   The undersigned granted petitioner's motion and gave him a deadline of February 3, 2014 to communicate his demand to respondent.

On February 3, 2014, petitioner filed a status report stating he was still assembling a demand to send to respondent.   He explained that because "petitioner's condition includes chronic and permanent conditions related to his vaccine injury . . . [he had] engaged the services of a life care planner to evaluate his condition and the effect it will have on his future."   Status Rep. at 1.   Petitioner further explained that his attorney had discussed the issue with respondent's counsel, and she "indicated she understood the need to have a complete understanding of petitioner's situation regarding his vaccine injury and does not object to petitioner submitting a demand when all necessary information is available."   Id.

On February 24, 2014, petitioner submitted another status report explaining the life care planner needed to consult with petitioner's primary care physician to determine petitioner's future healthcare needs.   He requested a new deadline of April 2, 2014 to send a demand to respondent.   The undersigned granted his motion the next day.

On April 2, 2014, petitioner filed a status report explaining he had not yet communicated a demand to respondent because his life care planner had not finalized her report.   She was waiting to receive a report from petitioner's medical provider in order to complete her life care plan.

During a status conference on April 24, 2014, petitioner said he had sent a demand to

2

respondent on April 18, 2014.   Respondent's counsel said she was not sure whether her client would to settle due to the timing of the onset of petitioner's alleged vaccine injuries.

On June 2, 2014, petitioner filed a memorandum and a second affidavit in order to clarify the timing of the onset of the symptoms of his vaccine injury.   On June 3, 2014, the undersigned held a status conference in which the parties discussed the issue of the onset of petitioner's winged scapula.   The undersigned ordered respondent to file her Rule 4(c) Report by August 4, 2014.   On July 28, 2014, respondent filed her Rule 4(c) Report, which summarized petitioner's medical records and explained that respondent still believed that the onset of petitioner's scapular winging was too close in time to his flu vaccine to show causation.

During a telephonic status conference on August 21, 2014, the undersigned ordered petitioner either to make a revised demand on respondent or file an expert report by October 20, 2014.   After receiving three extensions of time, petitioner filed a report by Dr. Marcel Kinsbourne on January 3, 2015.   Ex. 15.   During a status conference on January 6, 2015, respondent's counsel said she would check with her client to see if petitioner's report changed her client's view on settling the case.   At the next status conference on March 4, 2015, respondent explained she had retained an expert.   The undersigned set a deadline of April 3, 2015 for respondent to file her expert report.   Petitioner's counsel said he would speak with his client about revising his original settlement demand.

On March 30, 2015, respondent filed an expert report by Dr. Vinay Chaudhry.   Ex. A. At the next status conference on April 9, 2015, the undersigned set a deadline of June 8, 2015 for petitioner to file an expert report from Dr. Kinsbourne responding to Dr. Chaudhry's report. During the same status conference, petitioner's counsel explained he had sent a revised demand to respondent, which was still too high for respondent to accept.   Petitioner's counsel said he would call respondent's counsel to discuss the matter.

Petitioner filed Dr. Kinsbourne's responsive expert report on June 8, 2015.   The undersigned held the next telephonic status conference on June 23, 2015, during which the parties explained that they had been unable to settle.   Petitioner said he was considering lowering his most recent demand.   The parties decided to set a date for an entitlement hearing.

In a Pre-Hearing Order on August 4, 2015, the undersigned scheduled a three-day entitlement hearing beginning on December 1, 2015.   After the parties had filed their pre-hearing submissions on October 29, 2016, the undersigned issued an Order adjusting the length of the hearing to two days because only four witnesses would be testifying.

During the pre-hearing status conference on November 23, 2015, the undersigned urged the parties to settle the case before the hearing.

The entitlement hearing began on December 1, 2015.   After a break during the first day of the hearing, the parties informed the undersigned that they had settled.   The undersigned ended the hearing and issued a 15-Week Order on the same day.

On February 19, 2016, the parties filed a stipulation for award.   On the same day, the undersigned issued a decision awarding damages of $200,000.00 based on the parties' stipulation.

Petitioner filed a motion for attorneys' fees and costs on March 4, 2016, requesting a total of $121,944.74 in attorneys' fees and costs.   Respondent filed a response to petitioner's motion on March 10, 2016.   On March 18, 2016, petitioner filed a Motion to Strike the application for attorneys' fees and costs filed on March 4, 2016 because he had forgotten to include expenses petitioner incurred in retaining a life care planner.   Petitioner filed an amended motion for attorneys' fees and costs along with his Motion to Strike, requesting $132,550.68.   The undersigned granted petitioner's Motion to Strike on March 21, 2016.   Respondent filed a response to petitioner's amended motion for attorneys' fees and costs on March 31, 2016.   On April 5, 2016, petitioner filed a reply to respondent's response.

This matter is now ripe for adjudication.

## DISCUSSION

### I.      Entitlement to Fees and Costs Under the Vaccine Act

Under the Vaccine Act, a special master or a judge on the U.S. Court of Federal Claims shall award reasonable attorneys' fees and costs for any petition that results in an award of compensation.   42 U.S.C. § 300aa-15(e)(1); Sebelius v. Cloer, 133 S. Ct. 1886, 1893 (2013). Petitioner was awarded compensation pursuant to the parties' stipulation.   Therefore, petitioner is entitled to an award of reasonable attorneys' fees and costs in this case.

### II.      Reasonableness of Requested Attorneys' Fees and Costs

The Federal Circuit has approved the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act, which involves a two-step process.    Avera v. Sec'y of HHS, 515 F.3d 1343, 1347 (Fed. Cir. 2008).   First, a court determines an "initial estimate . . . by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'"   Id. at 1347–48 (quoting Blum v. Stenson, 465 U.S. 886, 888 (1984)). Second, the court may make an upward or downward departure from the initial calculation of the fee award based on specific findings.   Id. at 1348.

In her Response dated March 31, 2016, respondent states that her "estimation of reasonable attorneys' fees and costs for the present case roughly falls between $58,000.00 and $85,000.00."   Id. at 3.   Respondent bases this estimate on a "survey of fee awards in similar cases and her experience litigating Vaccine Act claims."    Id.   As respondent does not object to any specific portion of petitioner's attorneys' fees and costs request, the undersigned will *sua sponte* decide on the appropriate amount of attorneys' fees and costs to award in this case.

4

**A. Reasonable Attorneys' Fees**

Counsel must submit fee requests that include contemporaneous and specific billing entries indicating the task performed, the number of hours expended on the task, and who performed the task.   See Savin v. Sec'y of HHS, 85 Fed. Cl. 313, 316–18 (Fed. Cl. 2008). Counsel must not include in their fee requests hours that are "excessive, redundant, or otherwise unnecessary."   Saxton v. Sec'y of HHS, 3 F.3d 1517, 1521 (Fed. Cir. 1993) (quoting Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)).   It is "well within the special master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." Id.   Furthermore, the special master may reduce fees sua sponte, apart from objections raised by respondent and without providing petitioners notice and opportunity to respond.   See Sabella v. Sec'y of HHS, 86 Fed. Cl. 201, 208–09 (Fed. Cl. 2009).   A special master need not engage in a line-by-line analysis of petitioner's fee application when reducing fees.   Broekelschen v. Sec'y of HHS, 102 Fed. Cl. 719, 729 (Fed. Cl. 2011).

**1. Hourly Rates**

A reasonable hourly rate is "the prevailing market rate defined as the rate prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."   Id. (citation and quotation marks omitted).   In Avera, the Federal Circuit found that in Vaccine Act cases, a court should use the forum rate, i.e., the D.C. rate, in determining an award of attorneys' fees.   515 F.3d 1343 at 1349.   At the same time, the court adopted the Davis County exception to prevent windfalls to attorneys who work in less expensive legal markets.   Id. (citing Davis County Solid Waste Mgmt. & Energy Recovery Spec. Serv. Dist. v. U.S. Envtl. Prot. Agency, 169 F.3d 755 (D.C. Cir. 1999)).   In cases where the bulk of the work is completed outside the District of Columbia, and there is a "very significant difference" between the forum hourly rate and the local hourly rate, the court should calculate an award based on local hourly rates.   Id. (finding the market rate in Washington, DC to be significantly higher than the market rate in Cheyenne, Wyoming).

Two attorneys, Richard Gage and his associate Donald Gerstein, worked on this case. Because Mr. Gage's office, Richard Gage & Associates, P.C., is based in Cheyenne, Wyoming, both attorneys are not entitled to forum rates under Avera.   Instead, a reasonable hourly rate for Mr. Gage and Mr. Gerstein is that of a lawyer of "reasonably comparable skill, experience, and reputation" in Cheyenne, Wyoming.

**a. Mr. Gage's Hourly Rate**

Petitioner requests an hourly rate of $270.00 for Mr. Gage's work on his case in 2013. Fee app., Tab C.   The undersigned finds Mr. Gage's requested rate unreasonable.   She notes that several special masters awarded Mr. Gage a $260.00 hourly rate for his work in the year 2013.   See, e.g., Caudillo v. Sec'y of HHS, No. 08-0334V, 2014 WL 1286583, at *2 (Fed. Cl. Spec. Mstr. Mar. 4, 2014); Dingle v. Sec'y of HHS, No. 08-579V, 2014 WL 630473, at *3 (Fed. Cl. Spec. Mstr. Jan. 24, 2014); Walters v. Sec'y of HHS, No. 06-0380V, 2013 WL 5460194, at

*3 (Fed. Cl. Spec. Mstr. Sept. 3, 2013); <u>Lawrence v. Sec'y of HHS</u>, No. 09–0435V, 2013 WL 3146775, at *4 (Fed. Cl. Spec. Mstr. May 28, 2013).   In a recent case, however, Special Master Corcoran awarded Mr. Gage $294.86 for work performed in 2013.   <u>Auch v. Sec'y of HHS</u>, No. 12-673 (Fed. Cl. Spec. Mstr. May 20, 2016) (published on Court's website).   Special Master Corcoran reached this figure by deciding that based on Mr. Gage's extensive experience in the Vaccine Program he was entitled to an hourly rate of $300.00 for work performed in 2015.   <u>Id.</u> at 16.   Special Master Corcoran then worked backwards to find the appropriate hourly rate for Mr. Gage in 2013.   <u>Id.</u> at 17.

However, the undersigned still finds that it is appropriate to award an hourly rate of $260.00 for the work Mr. Gage performed in 2013.   Petitioner provided no justification for requesting an hourly rate $10.00 higher than $260.00, which is the rate the vast majority of special masters have found Mr. Gage is entitled to.   Therefore, the undersigned will award petitioner $260.00 an hour for Mr. Gage's work in 2013.   This results in a reduction of $92.00 from petitioner's fee award.

The undersigned likewise finds petitioner's request of $285.00 per hour for the years 2014 and 2015 unreasonable.   In <u>McCulloch</u>, Special Master Gowen explained that he found the rate of 3.7% informative in calculating the growth of attorneys' fees year-to-year.   <u>McCulloch v. Sec'y of HHS</u>, No. 09-293V, 2015 WL 5634323, at *16 (Fed. Cl. Spec. Mstr. Sept. 1, 2015), <u>reconsideration denied</u>, No. 09-293V, 2015 WL 6181910 (Fed. Cl. Spec. Mstr. Sept. 21, 2015). This growth rate came from the "Real Rate Report," and showed that lawyer rates have been increasing at a rate "well in excess of the CPI," even post-recession.   <u>Id.</u>   Using the 3.7% adjustment from <u>McCulloch</u>, the undersigned finds that Mr. Gage's rate should be $270.00 in 2014 and $280.00 in 2015 (rounded upwards).   This results in further reductions from petitioner's fee award of $351.00 for Mr. Gage's work in 2014 and $50.00 for his work in 2015.

Petitioner requests an hourly rate of $285.00 for the 0.5 hours Mr. Gage spent reviewing his fee application in 2016.   However, the undersigned finds it reasonable to use an hourly rate of $290.00 for Mr. Gage's work in 2016, as that aligns with the 3.7 percentage increase used in <u>McCulloch</u>.   Consequently, the undersigned awards an additional $2.50 for Mr. Gage's work in 2016.   **In sum, therefore, the undersigned reduces petitioner's fee award by a total of $490.50 for Mr. Gage's work on the case**.

### b.   Mr. Gerstein's Hourly Rate

Petitioner requests identical hourly rates for Mr. Gage and Mr. Gerstein, namely, $270.00 in 2013, and $285.00 for 2014, 2015, and 2016.   Petitioner does not give any justification for why Mr. Gerstein, an associate, should receive the same hourly rate as the named partner at his firm.   The undersigned does not find it reasonable to award identical attorneys' fees to a partner and an associate.   Moreover, Mr. Gage has been practicing in the Vaccine Program for 26 years, while Mr. Gerstein began practicing in the Vaccine Program in 2010.   <u>See</u> Richard Gage & Associates, <u>Attorney Profiles</u>, http://www.richardgage.net/attorneyprofiles.html (last visited July 28, 2016).   Given the wide disparity of the attorneys' level of experience in the Vaccine Program, the undersigned finds it reasonable to calculate petitioner's fee award using the hourly

rate of $225.00 for Mr. Gerstein's work in 2013.   Using the 3.7% adjustment from <u>McCulloch</u>, the undersigned will award petitioner hourly rates of $233.00 for Mr. Gerstein's work in 2014, $242.00 for his work in 2015, and $251.00 for his work in 2016. **This results in total a reduction $11,625.40 from petitioner's award of attorneys' fees and costs**.[2]

## 2.  Hours Reasonably Expended

In her response to petitioner's application for attorneys' fees and costs, respondent notes that "the proceedings in this case were significantly extended due to petitioner's request for significant future lost wages and future medical expenses."   Resp. at 3 note 1.   As respondent notes, petitioner testified at the hearing that he did not have any wage loss or future medical expenses.   Instead, petitioner testified he was able to perform his job and was not receiving routine medical care for his vaccine injury.   In response, petitioner argues that because the lost wages and future medical expenses components of petitioner's claim would not "have been ripe for litigation in a causation hearing," it is not appropriate for respondent to say that these components prolonged the resolution of the case.   Reply at 2.   Finally, petitioner states that "documentation supporting lost wages was provided to [r]espondent's counsel on at least two occasions."   <u>Id.</u>

The undersigned does not find petitioner's arguments persuasive.   Petitioner's counsel may have provided documentation supporting petitioner's lost wages during settlement negotiations, but his client did not agree with petitioner's counsel's assessment that his vaccine injury had resulted in any wage loss.   The parties settled the case during a break in the entitlement hearing, immediately after petitioner testified during cross-examination that he did not have any wage loss or future medical expenses.

Moreover, the undersigned finds that petitioner's counsel's lack of understanding of his client's case significantly extended the resolution of the case.   While it is true that the issues of wage loss and future medical expenses would not have been litigated at an entitlement hearing, the undersigned urged the parties to settle numerous times before the entitlement hearing, including during the pre-hearing status conference.   As evidenced by the fact that the parties settled immediately after petitioner testified he had not experienced any wage loss and did not expect to have medical expenses in the future, the case would likely not have gone to hearing if petitioner's counsel had clearly understood petitioner's damages during settlement negotiations.

---

[2] Petitioner requests $10,233.00 for Mr. Gerstein's 37.9 hours of work in 2013.   Using the hourly rate of $225.00, the undersigned will award $8,527.50, a reduction of $1,705.50.   For 2014, petitioner requests $17,670.00 for 62 hours of work.   The undersigned awards $14,446.00, a reduction of $3,224.00.   For 2015, petitioner requests a fee award of $46,640.80.   This is comprised of 151.2 hours of time working on the case at an hourly rate of $285.00 and 25.9 hours of travelling time billed at a rate of $137.00 per hour.   Using the hourly rate of $242.00 for Mr. Gerstein's work in 2015 and $137.00 for his traveling time, the undersigned awards petitioner a total of $40,138.70 for his work in 2015, a reduction of $6,502.10.   Finally, petitioner requests $1,624.50 for 5.7 hours of work performed in 2016.   Using a rate of $251.00, this undersigned awards $1,430.70 for Mr. Gerstein's work in 2016, a reduction of $193.80.

Therefore, the undersigned will reduce petitioner's award of attorneys' fees and costs by 30 percent, which is an estimate of how much time the resolution of the case was prolonged by petitioner's counsel's failure to investigate the appropriate amount of damages to use in negotiating a settlement for his client.   The undersigned includes petitioner's costs as well as fees in this reduction because a significant amount of petitioner's costs would have been eliminated if petitioner's counsel had asked for the appropriate amount of damages when attempting to settle this case before the entitlement hearing.   For example, the hours that petitioner's counsel and petitioner's expert, Dr. Kinsbourne, spent preparing for the entitlement hearing would have been eliminated.   However, the undersigned will not reduce petitioner's costs by 30 percent, as the reduction is due to petitioner's counsel's oversight, not petitioner's oversight.

**B.  Reasonable Attorneys' Costs**

Attorneys' costs must be reasonable as well.   See Perreira v. Sec'y of HHS, 27 Fed. Cl. 29, 34 (Fed. Cl. 1992) ("The conjunction 'and' conjoins both 'attorneys' fees' and 'other costs' and the word 'reasonable' necessarily modifies both.   Not only must any request for reimbursement of attorneys' fees be reasonable, so also must any request for reimbursement of costs.").

**1.  Preparation of a Life Care Plan**

Petitioner asks to be reimbursed a total of $10,605.94 for the preparation of a life care plan.   In a status report filed on February 3, 2014, petitioner explained that he was hiring a life care planner to help formulate a demand.   He explained that a life care plan was needed because "petitioner's condition includes chronic and permanent conditions related to his vaccine injury . . . ." Status Rep. at 1.   However, during the entitlement hearing petitioner testified to the opposite of the statement made in his status report.   Petitioner's counsel hired a life care planner due to a misunderstanding of his client's case.   Therefore, the undersigned will not reimburse petitioner for any of the cost of hiring a life care planner **Accordingly, the undersigned reduces petitioner's award of attorneys' fees and costs by $10,605.94.**

**CONCLUSION**

The undersigned finds an award of attorneys' fees and costs appropriate.   In sum, the undersigned awards petitioner the following amount for attorneys' fees and costs:

| | |
|---|---|
| Requested Attorneys' Fees: | $94,120.60 |
| Reductions from hourly rate changes: | $12,115.90 |
| 30% reduction: | $24,601.41 |
| **Attorneys' Fees Awarded:** | **$57,403.29** |
| | |
| Requested Attorneys' Costs: | $37,131.04 |
| Reduction for hiring a life care planner: | $10,605.94 |

| | |
|---|---|
| 30% reduction: | $7,957.53 |
| **Attorneys' Costs Awarded:** | **$18,567.57** |
| | |
| Requested Petitioner's Costs: | $1,299.04 |
| Reductions: | $0.00 |
| **Petitioner's Costs Awarded:** | **$1,299.04** |
| | |
| <u>Total Requested Fees & Costs</u>: | $132,550.68 |
| **<u>Total Fees & Costs Awarded</u>:** | **$77,269.90** |

**Accordingly, the court awards:**

a. **$75,970.86**, representing attorneys' fees and costs.   The award shall be in the form of a check made payable jointly to petitioner and Richard Gage & Associates, P.C. in the amount of **$75,970.86**; and

b. **$1,299.04**, representing petitioner's costs.   The award shall be in the form of a check made payable to petitioner for **$1,299.04**.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court is directed to enter judgment herewith.[3]

**IT IS SO ORDERED.**

Dated: <u>July 28, 2016</u>                                   /s/ Laura D. Millman
                                                                Laura D. Millman
                                                                Special Master

---

[3] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party, either separately or jointly, filing a notice renouncing the right to seek review.